USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-2024 AWILDA VILLARINI-GARCIA, Plaintiff, Appellee, v. HOSPITAL DEL MAESTRO, ET AL., Defendants, Appellees. __________ MARIO J. TOMASINI, DR., Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. James L. Watson,* Senior Judge] ____________ ____________________ Before Boudin, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Raul Davila-Rivera and Alberto O. Jimenez with whom Bauza and ___________________ ___________________ _________ Davila were on briefs for appellant. ______ Kevin G. Little with whom Law Offices of David Efron was on brief _______________ __________________________ for appellee. ____________________ April 24, 1997 ____________________  ____________________ *Of the Court of International Trade, sitting by designation. BOUDIN, Circuit Judge. Dr. Mario J. Tomasini appeals ______________ from an adverse judgment against him for medical malpractice. Dr. Tomasini makes several claims of error, only one of which requires extended discussion. On that claim, which presents a difficult question concerning offsets to damage awards, we conclude that a deduction is required in this case to account for payment already received in settlement by the plaintiff, Awilda Villarini-Garcia, from the hospital for the same injury. This case began with an operation performed by Dr. Tomasini in September 1986 at Hospital del Maestro in Puerto Rico. During the operation, Dr. Tomasini removed a birthmark or mole from Villarini's back, and a piece of muscle tissue. In her later complaint against Dr. Tomasini and the hospital, Villarini charged the doctor with negligence in removing the muscle tissue, causing her continuing pain and severely impairing her career as a concert pianist. Villarini did not file her complaint against the doctor and hospital until June 1990, well after Puerto Rico's normal one year statute of limitations. 31 L.P.R.A. 5298. Villarini argued that the statute was tolled under Puerto Rico's discovery rule until she acquired sufficient knowledge of the basis of her claim. The district court dismissed the case on summary judgment for failure to meet the statute of limitations, and Villarini appealed. -2- -2- This court affirmed the dismissal as to three of Villarini's four claims of negligence but reversed as to one claim. Villarini v. Hospital del Maestro, 8 F.3d 81 (1st _________ _____________________ Cir. 1993). On that last claim, we said that summary judgment was improper and that it was likely to be a jury question whether Villarini had exercised sufficient due diligence to give her the protection of the discovery rule. Following remand, the hospital settled with Villarini for $50,000, and the case proceeded to trial against Dr. Tomasini. At the end of the trial, the jury awarded Villarini $100,000 for physical and mental damage and $500,000 for loss of earnings. Among other post-trial requests, Dr. Tomasini sought a deduction from the judgment of $50,000, representing the amount that the hospital had paid in settlement. The district court refused. This appeal followed. On appeal, Dr. Tomasini makes six claims of error, the last one being the denial of the deduction. Four of the claims relate to sufficiency of the evidence: Dr. Tomasini says that the evidence was insufficient to allow Villarini to escape the statute of limitations, or to establish malpractice, or to show causation, or to support the amount awarded. A fifth claim is directed at testimony of an agent, who represents musicians, offered by Villarini to support her claimed loss -3- -3- of income; Dr. Tomasini says that the witness was not qualified and lacked an adequate basis for his testimony.  The challenges to the evidence--as to timeliness, negligence, causation, and damages--are legitimate issues; but having considered the evidence described in the briefs and set forth in the record, we think that the jury's verdict is not irrational on any of these issues and that the district court acted within its discretion in holding the expert to be qualified and his opinion adequately grounded. There is nothing about these fact-bound issues that warrants discussion in a published opinion. The one issue that does require discussion is Dr. Tomasini's final argument that the $600,000 jury verdict should be reduced by $50,000 to reflect the amount Villarini received in settlement from his former co-defendant, the Hospital del Maestro. After the jury rendered its verdict, Dr. Tomasini filed a timely motion under Fed. R. Civ. P. 59(e) to amend the judgment to deduct the $50,000 settlement, and the district court denied the motion.  The court based its denial on the fact that the hospital was not "jointly" liable for the injury along with Dr. Tomasini; rather it was sued only on vicarious liability grounds. See 31 L.P.R.A. 5142. Villarini presses the same ___ objection on appeal. Implicit in the district court's ruling, and explicit in Villarini's argument, is the notion -4- -4- that there is no right to offset an earlier settlement made by a co-defendant where the remaining co-defendant did not have a right of contribution against the settling co- defendant.1 This presents a legal issue that we consider de __ novo, and conclude that the linkage of contribution and ____ offset has no sound basis. In almost all jurisdictions, settlement payments to the plaintiff from one of several joint tortfeasors--those who actively contributed to the same injury--reduce any judgment later secured against the nonsettling tortfeasor(s). McDermott v. AmClyde, 511 U.S. 202, 208 (1994). The only _________ _______ debate is whether this reduction is to be made by a simple dollar-for-dollar offset or through a more complicated proportional liability formula. Id. at 208-17. See 6 Minzer ___ ___ et al., Damages in Tort Actions 51.25[1] (1966). ______ _______________________ Conversely, the usual rule is that a plaintiff's award will not be reduced for payments or benefits received from sources independent of those who wronged him. See ___ Restatement (Second) of Torts 920A(2) (1991); Robertson v. _____________________________ _________ White, 81 F.3d 752, 758 (8th Cir. 1996). This "collateral _____ source" rule allows a plaintiff to receive payments such as charitable donations and payments from his own insurer  ____________________ 1For obvious reasons, under Puerto Rico law, as elsewhere, the active tortfeasor has no right of contribution against another whose liability to the victim is at best vicarious. See FDIC v. Consolidated Mortgage, 805 F.2d 14, ___ ____ _____________________ 19 (1st Cir. 1986). -5- -5- without losing the ability to recover the full amount of his loss from the wrongdoer or wrongdoers. A few courts have refused to offset payments made by a settling co-defendant who turned out later not to be liable as a joint tortfeasor with the nonsettling defendant. E.g., ____ Medical Center of Delaware v. Mullins, 637 A.2d 6, 9-10 (Del. __________________________ _______ 1994); Collier v. Eagle-Picher Indus., Inc., 585 A.2d 256, _______ __________________________ 265-67 (Md. App. 1991). The rationale of these holdings is that since the primarily liable defendant would have been obligated to pay the entire damage amount if the settling party had never been sued (or did not settle), the former should not reap the benefit of a fortuitous settlement by the latter. Mullins, 637 A.2d at 10.  _______ The so-called "modern rule" expressed in the Restatement ___________ (Second) of Torts is very much to the contrary: it says that _________________ any payment "made in compensation of a claim for a harm" will reduce the liability of the remaining defendants, "whether or not the person making the payment is liable to the injured person." Id. 885(3) and comment (f). See also Restatement ___ ________ ___________ (Second) of Judgments 50(2) (1982). Many cases express the _____________________ right of offset in the same unqualified terms as the Restatement (although not all happen to involve a settling ___________ co-defendant who is vicariously liable).2 So, too, does a  ____________________ 2See Husky Refining Co. v. Barnes, 119 F.2d 715, 716 ___ ___________________ ______ (9th Cir. 1941); Lafayette v. County of Los Angeles, 208 Cal. _________ _____________________ Rptr. 668, 672-73 (Cal. Ct. App. 1984); Harriss v. Elliott, _______ _______ -6- -6- lucid discussion in the leading text, together with reasons for the Restatement rule. Keeton et al., Prosser and Keeton ___________ ______ __________________ on Torts 49, at 335-36 (5th ed. 1984).  ________ Puerto Rico law is controlling in this case and if the Puerto Rico courts had spoken to the precise question before us, their expressed view would be followed here. But no such ruling has been cited to us, and we can find none on our own. In such situations we may refer to common law rules. Fireman's Fund Am. Ins. Co. v. Almacenes Miramar, Inc., 649 ____________________________ _______________________ F.2d 21, 25 & n.3 (1st Cir. 1981); Futurama Import Corp. v. ______________________ Trans Caribbean Airways, 104 D.P.R. 609, 4 O.T.S.C.P.R. 854, _______________________ 861-62 (1976). Perhaps more importantly, we do know that Puerto Rico has disallowed double recoveries in a somewhat analogous context, expressing a general hostility to double recovery. In a set of cases, the Supreme Court of Puerto Rico held that a plaintiff's tort recovery against a non-employer defendant must be reduced by any workers' compensation payments that the plaintiff had already received from, or on behalf of, his employer. See Robles v. Superior Court, 85 ___ ______ ______________  ____________________ 565 N.E.2d 1041, 1044-45 (Ill. App. Ct. 1991); Mulinix v. _______ Saydel Consol. Sch. Dist., 376 N.W.2d 109, 110-11 (Iowa Ct. __________________________ App. 1985); Steger v. Egyud, 149 A.2d 762, 767-68 (Md. 1959); ______ _____ Midway Nat'l Bank v. Estate of Bollmeier, 504 N.W.2d 59, 65- __________________ ___________________ 66 (Minn. Ct. App. 1993); Kirby v. New Mexico State Highway _____ _________________________ Dep't, 643 P.2d 256, 259-260 (N.M. Ct. App. 1982); Mead v. _____ ____ Bloom, 464 N.Y.S.2d 904, 904-05 (N.Y. App. Div. 1983); _____ Bellamy v. Prime, 270 N.Y.S.2d 93, 94 (N.Y. App. Div. 1966). _____ -7- -7- P.R.R. 640, 647 (1962); Sanabria v. White Star Bus Line, 50 ________ ____________________ P.R.R. 722, 725 (1936); Machado v. The American R.R. Co. of _______ _________________________ P.R., 49 P.R.R. 823, 831-32 (1936). The Robles court said ____ ______ that these cases were "inspired on the principle that no one should or may unjustly enrich himself by receiving double compensation for the same accident." 85 P.R.R. at 647. The collateral source rule, also followed in Puerto Rico, Futurama, 4 O.T.S.C.P.R. at 857-60, obviously does ________ permit double recovery in certain situations; but it does so primarily where the extra benefit comes from insurance for which the plaintiff could easily have paid or from private generosity aimed at benefiting the victim rather than a wrongdoer. Payments from prospective co-defendants, whether vicariously or jointly liable, are clearly of a different character. See Restatement (Second) of Judgments 50, ___ ____________________________________ comment (e) (1982). Absent good reason--and none is suggested to us--courts are loath to promote double recoveries. See generally ______________ Torres-Troche v. Municipality of Yauco, 873 F.2d 499, 501-02 _____________ ______________________ (1st Cir. 1989). Even more troubling, without an offset the primary tortfeasor could easily be made to pay twice: ordinarily, a vicariously liable master who settled would have an independent claim for indemnification against the careless servant. See 31 L.P.R.A. 5143; Restatement ___ ___________ (Second) of Agency 401 and comment (d) (1958). __________________ -8- -8- Here, we are told that the hospital not only paid $50,000 to Villarini but purported to transfer its claim for indemnification to Villarini; and Villarini told us at oral argument that no further suit on the indemnification claim is now possible. Even so, no apparent justification is suggested here for double recovery by the victim. The jury assessed total injury at $600,000 and until Puerto Rico instructs otherwise, we see no reason why Villarini should enjoy compensation of $650,000 from the former co-defendants. Accordingly, we remand the case to the district court, direct that the judgment be reduced by $50,000 representing the amount paid in settlement by the hospital, and otherwise affirm the judgment. It is so ordered. _________________ -9- -9-